### MARY C. ALLIS *vs.* EDWARD K. WARE and another.

### July 27, 1881.

**Insurance on Life of Husband for Benefit of Wife and Children—Title to Policy.**—Action to recover possession of a policy upon the life of the plaintiff's husband, payable upon his death to his wife, or, in case of her death before his, then to their children, the husband having paid all the premiums. *Ricker* v. *Charter Oak Life Ins. Co.*, 27 Minn. 193, followed, upon the points that such policy belongs, the moment it is issued, to the beneficiaries named therein; that the life insured has no legal or equitable interest in it; that if it has been delivered to and is held by him, he holds it as a naked deposit, and that, therefore, he cannot assign or transfer it for any purpose, in pledge or otherwise.

**Same—Assignment by Wife as Security for Husband's Debt—Extension of Time of Payment of Debt without her Knowledge.**—The plaintiff, her husband joining, made and delivered a written assignment of the policy mentioned, to secure the payment of two described notes, one payable in 60 days and the other in six months after date, given by her husband for his prior indebtedness, and for his benefit, and in his business, and not for her benefit nor in her business, as the assignee well knew. The assignment provided that if the notes were not paid within two years and six months from date, the assignee might surrender the policy, receive the full surrender value, and pay the notes from the pro-

ceeds; and if the life insured should die at any time before the notes were paid, the assignee was authorized to receive from the insurance money the sum due upon the notes, and upon their payment the assignment was to be void. When the 60 days' note became due, it was satisfied and surrendered. When the other fell due, new notes were given in its place, payable in three and six months, and thereupon the old note was surrendered to the maker. Some time after they fell due, these new notes were surrendered to the maker, who gave two other notes in their place, payable in four and six months. Of these changes plaintiff had no notice or knowledge. One of the notes last given is still unpaid. The plaintiff made no agreement respecting the policy, except that contained in the assignment before mentioned. *Held,* 1. That the plaintiff, in assigning the policy, became at most merely a surety for her husband, and that the time for the payment of the debt for which she became a surety having been enlarged without her knowledge or consent, (even if it was not actually paid by the surrender of the old note,) discharged her and set her policy free. 2. That the provision in the assignment authorizing the assignee to "realize" from the policy, in case the original notes were not paid in two years and six months, in no way extended their time of payment, nor authorized the assignee to extend the same, or waived any of the plaintiff's rights in case of such extension. 3. That, at least in the absence of any objection for want of proper parties plaintiff, by demurrer or answer, the plaintiff alone is entitled to maintain an action for the recovery of the policy against mere strangers having no right to its possession.

Plaintiff brought this action in the district court for Ramsey county, against the defendants Edward K. Ware and James H. Davidson, to recover possession of a paid-up policy of insurance on the life of her husband, Lorenzo Allis. The action was tried by *Brill,* J., without a jury, and judgment was ordered and entered for the plaintiff, and the defendants appealed.

*W. E. Benjamin* and *Williams & Davidson,* for appellants.

*Lorenzo Allis,* for respondent.

BERRY, J. The policy in controversy in this action was issued upon the application of Lorenzo Allis, the plaintiff's husband, whose life was insured, and the ten premiums which the policy called for have been paid by him. By the terms of the policy the insurance money was made payable, upon the death of the life insured, to the plaintiff, or in case of her death before his, then to their children.

1. We will first consider whether Lorenzo Allis could assign or pledge the policy. This question is substantially answered by *Ricker* v. *Charter Oak Life Ins. Co.*, 27 Minn. 193. So far as it is concerned, the only difference between that case and the case at bar is that in the latter it is found that the charter of the company by which the policy now in controversy was issued contained the following provisions: "That policies may be issued by said company to any married woman in her name, or in the name of a third person as trustee, to cause to be insured the life of her husband for any given period, or for the term of his natural life; and in case of her surviving her husband, the sum or net amount of insurance shall be payable to her for her sole use and benefit, free from any claims of any or either of the creditors or representatives of her husband; and in case of death of the wife before the decease of her husband, the amount of the insurance may be made payable after her death to her child or children, for his, her or their benefit, or their guardian or guardians, if under age; that policies of insurance issued by said company on the life of any person, expressed to be for the benefit of a married woman, whether the same be effected by herself or her husband, or by any other person in her behalf, shall enure to her separate use and benefit, and that of her or her husband's children, if any, as may be expressed in said policies, independently of her husband, and of his creditors and representatives, and also independently of any other person effecting the same in her behalf, his creditors and representatives,"—and in the further finding that "the general laws of the state of Connecticut contained substantially the same provisions at the time of the issuance of said policy."

A glance at the opinion of this court in the case cited will show that these findings in no way affect its applicability to this case; for, whether the rights and powers of Lorenzo Allis and of the plaintiff in respect to assigning or pledging the policy depend upon the laws of Connecticut, where it was issued, or upon the laws of this state, the result, so far as the findings quoted are concerned, is the same. That is to say, there is nothing in these findings tending to show that the law of Connecticut, as to the assignment and pledge of policies upon the life of a husband for the benefit of a wife, differs from what is

stated in the *Ricker Case* to be "the common law of this state, independent of any statute upon the subject." On the contrary, so far as the findings bear upon the matter, it seems that the charter provision and the general law of Connecticut are substantially the same as the common law mentioned. This case, as respects the question above propounded, is, therefore, ruled by the *Ricker Case*, the doctrine of which is that a policy of the kind mentioned in this appeal belongs the moment it is issued to the beneficiaries named therein; that the life insured has no legal or equitable interest in it; that if it has been delivered to and is held by him, he holds it as a naked deposit, and that therefore he cannot assign or transfer it for any purpose, in pledge or otherwise. It follows that Lorenzo Allis could not assign or pledge the policy.

2. On January 14, 1875, Lorenzo Allis made and delivered to one Turrell two promissory notes, payable to Turrell's order,—one for $586.90, payable 60 days after date, without grace; and the other for $3,500, payable six months after date, both with interest at 12 per cent. per annum. These notes were, as found by the trial court, given for a prior indebtedness of the maker (Allis) to Turrell, and in the business and for the benefit of Allis, and not in the business or in any manner for the benefit of the plaintiff, which fact Turrell well knew. At the same time, (January 14, 1875,) Allis and the plaintiff, at his request, executed and delivered to Turrell a written assignment of the policy in controversy, "to secure" (in the words of the assignment) "the payment of two certain notes made by the said Lorenzo Allis," the assignment describing in detail the two notes above mentioned. The assignment further provided that if the said notes were not paid within two years and six months from date, Turrell might surrender the policy, and receive the full surrender value, and pay the notes from the proceeds; and if Allis should decease at any time before the notes were paid, Turrell was authorized to receive from the insurance money the sum due on the notes, and upon their payment the assignment was to be void. When the note for $586.90 became due, it was satisfied and cancelled and surrendered to Allis. When the $3,500 note became due, (July 14, 1875,) Allis gave Turrell in

its place his two notes, payable to Turrell's order,—one for $2,000, in three months; the other for $1,710, in six months, with 12 per cent. interest,—the two notes being for the amount (principal and interest) of the $3,500 note,—and thereupon the $3,500 note was surrendered to Allis. Of this transaction plaintiff had no notice or knowledge. On March 7, 1876, the last-made notes were surrendered to Allis, who made and delivered to Turrell, in their place, two other notes, payable to Turrell's order,—one for $1,291.68, in four months; the other for $2,640.07, in six months, both with 12 per cent. interest. Of this transaction plaintiff had no notice or knowledge. The note for $1,291.68 was surrendered when due. The note for $2,640.07 has never been paid. The plaintiff has made no agreement of any kind respecting the policy except that contained in the assignment as before mentioned.

It is found—though it does not seem important—that there was no express agreement between Lorenzo Allis and Turrell, respecting the policy, except that contained in the assignment; but the policy remained in Turrell's hands, and it was tacitly understood between them that it remained as security for the payment of the new notes as they were given. Through sale of the note for $2,640.07, and assignment of the policy as security for the same, by Turrell and his vendee, the note and policy came into the hands of the defendants, who are now in possession of the policy. From the facts found it is clear that Mrs. Allis, the plaintiff, in assigning the policy as security for her husband's sole debt, of which fact Turrell was cognizant, became at most merely surety for her husband. Her rights are, therefore, at least those of a surety. The time for the payment of the debt for which she thus became surety was twice enlarged without her knowledge or consent, even if it was not actually paid by the surrender of the old note and the taking of the new notes in its place. This enlargement or extension discharged the surety (the plaintiff) and set her policy free. *Wheaton* v. *Wheeler*, 27 Minn. 464. This result is not prevented by the provision in the assignment giving Turrell authority to "realize" from the policy in case the original notes were not paid within two years and six months

after date. This provision in no way extended the time of payment of the notes, nor did it authorize Turrell to extend the same, nor waive any of the plaintiff's rights in case an extension was granted, without her consent. The obvious purpose of the provision was to prevent a sacrifice of the policy or a resort to it until the expiration of two years and six months. It was a stipulation wholly in the interest of the plaintiff.

3. One other question remains to be considered: Is the plaintiff entitled to the possession of the policy, so that she can maintain this action, her husband living? The plaintiff and the children of herself and her husband are the beneficiaries of the policy. It belongs to them. They are not beneficiaries in common, because the plaintiff, if she survive her husband, is the primary and exclusive beneficiary; but they have a common interest in its preservation, and in preventing its surrender, or any other act or neglect in regard to it by which their rights may be prejudiced. They therefore occupy, not exactly the position of tenants in common, but a position sufficiently analogous to enable them jointly to maintain an action for its possession. If so, then either of them can maintain such action against mere strangers having no right to such possession, like the defendants; at least when, as in this case, no objection for want of proper parties plaintiff is taken by demurrer or answer. *Miller* v. *Darling*, 22 Minn. 303. These are all the matters which it appears to us to be necessary to consider upon this appeal.

From what we have said, it follows, in our opinion, and substantially as found by the court below: (1) That 'Lorenzo Allis had no authority to assign or pledge the policy, so that any understanding in regard to it between him and Turrell was without effect upon the policy; (2) that the plaintiff, in making the assignment, was, to the extent of her right in the policy, no more than the surety of her husband; (3) that the taking of the new notes, in lieu of the surrendered old note, was an extension of the time of payment of the debt, for which the plaintiff pledged the policy, and therefore operated to discharge the suretyship and release the pledged policy; (4) that the plaintiff is entitled, at least as against mere strangers, to maintain this action to recover possession of the policy.

It is not necessary for us to consider plaintiff's position that the policy was absolutely unassignable. We have, for the purposes of this case, proceeded upon the assumption that the plaintiff could asssign it to the extent of her right in it.

Judgment affirmed.