## KNIGHTS OF MACCABEES OF THE WORLD, RESPONDENT, *v.* SACKETT, APPELLANT.

### (No. 2,278.)

(Submitted June 8, 1906. Decided July 6, 1906.)

*Life Insurance—Mutual Benefit Associations—Change of Beneficiary—By-laws—Waiver—Agency—Mail.*

Life Insurance—Mutual Benefit Associations—Change of Beneficiary.
   1.   A member of a benefit life insurance association has a right to change the beneficiary named in his certificate of insurance, by complying with the by-laws of the association governing the subject.
Same—By-laws—Waiver.
   2.   Any waiver of a strict compliance with the by-laws of a benefit life insurance association governing a change of beneficiary, must have occurred during the lifetime of the insured, and when so waived the former beneficiary upon the death of the insured cannot take advantage of a noncompliance with the rules covering the matter.
Same—Payment of Insurance Money into Court—Effect.
   3.   By paying into court the money due on a life insurance policy issued by a fraternal benefit association, the association waived the failure of insured to comply strictly with the by-laws of the order governing a change of beneficiary, but such waiver could not impair rights of the beneficiary which became vested on the death of the insured.

*Same—Change of Beneficiary—Requirements.*

4. With respect to mutual benefit insurance, it is a general rule that in making a change of beneficiary, the insured must proceed in accordance with the regulations contained in the policy and by-laws of the association, and any material deviation from the course therein indicated will invalidate the transfer.

*Same—Change of Beneficiary—Mailing—Agency.*

5. The by-laws of a fraternal life insurance association provided that a change of beneficiary should take effect upon delivery to the local record-keeper of a written request for such change. The insured placed his written request for change of beneficiary in the mail for delivery into the postoffice of the place where the record-keeper resided. Before delivery, insured died. *Held,* that by depositing the paper in the mail the insured constituted it his agent and assumed the risk of failure of delivery, or that it would not be made until a date too late to be of any effect, that the failure of the agent was his failure, and that therefore the contemplated change was not effectuated.

*Same—Change of Beneficiary—Receipt of Application After Death of Insured—Effect.*

6. The fact that a written request for a change of beneficiary in a policy of insurance issued by a mutual benefit association, the by-laws of which provided that such change should take effect only upon delivery to the local record-keeper of a request in writing therefor, had been placed in the mail for delivery and was actually received within about six hours after the death of the insured, could not affect the interest of the beneficiary named in the policy, whose title to the amount called for in it attached instantly upon the death of the insured.

*Same—Change of Beneficiary—Receipt of Application After Death of Insured—Equity.*

7. *Held,* that the doctrine that a court of equity will decree that to be done which ought to be done, did not apply where a member of a benefit life insurance association had, in an attempt to comply with its by-laws relative to a change of beneficiary, placed a written request for such change in the mail but, before delivery thereof in the postoffice of the place of residence of the local keeper of records, the insured died, he, by failure of his agent to deliver the request in time, not having done all that was incumbent upon him to do to make the change effectual.

*Appeal from District Court, Yellowstone County; C. H. Loud, Judge.*

ACTION by the Knights of the Maccabees of the World against Clarence M. Sackett and Fannie Sackett. From a judgment in favor of defendant Fannie Sackett, defendant Clarence M. Sackett appeals. Affirmed.

*Mr. O. F. Goddard,* for Appellant.

The association waived the failure of the deceased to lodge the request for change of beneficiary with the local record-

keeper before he died, such provision of the by-laws of the association being for its benefit. (*Titsworth* v. *Titsworth*, 40 Kan. 571, 20 Pac. 213; *Knights of Honor* v. *Watson*, 64 N. H. 517, 15 Atl. 125; *Brown* v. *Mansur*, 64 N. H. 39, 5 Atl. 768; *Splawn* v. *Chew*, 60 Tex. 536; *Jory* v. *Supreme Council*, 105 Cal. 20, 45 Am. St. Rep. 17, 38 Pac. 524, 26 L. R. A. 733; *Hall* v. *Allen*, 75 Miss. 175, 65 Am. St. Rep. 601, 22 South. 15. See, also, *Schmidt* v. *Iowa etc. Assn.*, 82 Iowa, 304, 47 N. W. 1032, 11 L. R. A. 205; *Rollins* v. *McHatton*, 16 Colo. 207, 208, 25 Am. St. Rep. 260, 27 Pac. 254; 1 Bacon on Benefit Societies, secs. 310, 310a.)

If the society has waived a strict compliance with its own rules, and in pursuance of a request of the insured to change his beneficiary has issued a new certificate to him, the original beneficiary will not be heard to complain that the course indicated by the regulations was not pursued. (*Martin* v. *Stubbings*, 126 Ill. 387, 9 Am. St. Rep. 620, 18 N. E. 657; *Manning* v. *Ancient Order*, 86 Ky. 136, 9 Am. St. Rep. 270, 5 S. W. 385; *National Mut. Aid Society* v. *Lupold*, 101 Pa. St. 111; *Byrne* v. *Casey*, 70 Tex. 247, 8 S. W. 38.)

If the insured has pursued the course pointed out by the by-laws of the association, and has done all in his power to change the beneficiary, but before a new certificate is actually issued he dies, a court of equity will decree that to be done which ought to be done, and act as though a certificate had been issued. (*McGowan* v. *Supreme Court of Independent Order of Foresters*, 104 Wis. 173, 80 N. W. 603; *Lahey* v. *Lahey*, 174 N. Y. 146, 95 Am. St. Rep. 554, 66 N. E. 670, 61 L. R. A. 791; *McLaughlin* v. *McLaughlin*, 104 Cal. 171, 43 Am. St. Rep. 83, 37 Pac. 865; 2 May on Insurance, sec. 399; *Schoenau* v. *Grand Lodge A. O. U. W.*, 85 Minn. 349, 88 N. W. 999; *Sanborn* v. *Black*, 67 N. H. 537, 35 Atl. 942.)

If the insured has done substantially all that is required by him, and that which remains to be done are ministerial acts of the officers, the change will take effect though the formal details were not complied with before the death of the insured. (*St.*

*Louis Police Relief Assn.* v. *Strode,* 103 Mo. App. 694, 77 S. W. 1091; *Donnelly* v. *Burham,* 177 N. Y. 546, 69 N. E. 1122; *Hall* v. *Allen,* 75 Miss. 175, 65 Am. St. Rep. 601, 22 South. 4; *Moan* v. *Normile,* 37 App. Div. 614, 56 N. Y. Supp. 339; *John Hancock Mut. Life Ins. Co.* v. *White,* 20 R. I. 457, 40 Atl. 5; *Manning* v. *A. O. U. W.,* 86 Ky. 136, 9 Am. St. Rep. 270, 5 S. W. 385; *Titsworth* v. *Titsworth, supra; Schmidt* v. *Iowa Knights of Pythias,* 82 Iowa, 304, 11 L. R. A. 205, 47 N. W. 1032; *Grand Lodge A. O. U. W.* v. *Child,* 70 Mich. 163, 38 N. W. 1; *Luhrs* v. *Luhrs,* 123 N. Y. 367, 20 Am. St. Rep. 754, 9 L. R. A. 534, 25 N. E. 388.)

Upon the general doctrine that the society may waive compliance with its rules and that the first beneficiary cannot object to the manner of change because it was not in strict conformity to the law of the society, we cite the following additional leading cases: *Supreme Lodge Order Golden Chain* v. *Terrell,* 99 Fed. 330; *Depee* v. *Grand Lodge A. O. U. W.,* 106 Iowa, 747, 76 N. W. 798; *Cade* v. *Head Camp W. O. W.,* 27 Wash. 218, 67 Pac. 603; *Hirschl* v. *Clark,* 81 Iowa, 200, 47 N. W. 78, 9 L. R. A. 841.)

*Mr. W. M. Johnston,* for Respondent.

The rights of the beneficiary in a certificate in a benefit society differ from the rights of a beneficiary in old line life insurance in that the right of the former is inchoate until the death of the member, when the right of the beneficiary becomes fixed and certain. The death of the insured in this case having occurred before the application for change of beneficiary was received by Mr. Brown, the right of this defendant became fixed and certain and could not therefore be defeated. (*McLaughlin* v. *McLaughlin,* 104 Cal. 171, 43 Am. St. Rep. 83, 37 Pac. 865; *Mason* v. *Mason,* 160 Ind. 191, 65 N. E. 585; *Stringham* v. *Dillon,* 42 Or. 63, 69 Pac. 1020; *Pennsylvania R. Co.* v. *Warren* (N. J.), 60 Atl. 1122; *Grace* v. *Northwestern etc. Assn.,* 87 Wis. 562, 41 Am. St. Rep. 62, 58 N. W. 1041; *Modern Woodmen of America* v. *Little,* 114 Iowa, 109, 86 N. W. 216; *Brown* v. *A. O. U. W.,* 208 Pa. St.

101, 57 Atl. 176, 177; *Independent Order Foresters* v. *Keliher,*
36 Or. 501, 78 Am. St. Rep. 785, 59 Pac. 324; *Woodmen Acc.
Assn.* v. *Hamilton* (Neb.), 97 N. W. 1017; *Hofman* v. *Grand
Lodge,* 73 Mo. App. 47.)

Where, as in this case, the application was not in the hands of
the proper officer prior to death of insured, it has almost, if not
quite, uniformly been held that the application was made too late
and the first beneficiary is entitled to the fund.   (*Counsman* v.
*Modern Woodmen of America* (Neb.), 96 N. W. 672, 98 N. W.
414; *Wendt* v. *Iowa Legion of Honor,* 72 Iowa, 682, 34 N. W.
470; *Ireland* v. *Ireland,* 42 Hun, 212; *Gladding* v. *Gladding,*
56 Hun, 639, 8 N. Y. Supp. 880; *Fink* v. *Fink,* 171 N. Y. 616,
64 N. E. 506; *Hamilton* v. *Royal Arcanum,* 189 Pa. St. 273, 42
Atl. 186; *Smith* v. *Harman,* 59 N. Y. Supp. 1044, 28 Misc. Rep.
681; *Berg* v. *Damkoehler,* 112 Wis. 587, 88 N. W. 606; *I. O. O. F.*
v. *Keliher,* 36 Or. 501, 78 Am. St. Rep. 785, 59 Pac. 324; *Legion
of Honor* v. *Smith,* 45 N. J. Eq. 466, 17 Atl. 770; *Stringham* v.
*Dillon,* 42 Or. 63, 69 Pac. 1020; *Modern Woodmen of America*
v. *Little,* 114 Iowa, 109, 86 N. W. 216; *Daniels* v. *Pratt,* 143 Mass.
216, 10 N. E. 166-170; *Knights of Honor* v. *Nairn,* 60 Mich. 44,
26 N. W. 826-829; *Shuman* v. *A. O. U. W.,* 110 Iowa, 642, 82
N. W. 331; *Holland* v. *Taylor,* 111 Ind. 121, 12 N. E. 116-119.
See, also, *Eagan* v. *Eagan,* 58 App. Div. 253, 68 N. Y. Supp.
777; *Tillman* v. *John Hancock M. L. I. Co.,* 27 App. Div. 392,
50 N. Y. Supp. 470.)

MR. JUSTICE HOLLOWAY delivered the opinion of the
court.

Floyd L. Sackett was a member of the order of the Knights of
the Maccabees of the World, having his membership in the local
tent at Park City, Montana.   He carried insurance on his life
in the association to the amount of $1,000, his wife, Fannie
Sackett, being named in the certificate of insurance as benefi-
ciary.   For some time prior to May, 1905, Floyd L. and Fannie
Sackett had not lived together.   The former made his home at

Yule, North Dakota. The latter lived at Park City, Montana. Prior to May, 1905, Floyd L. Sackett wrote a letter to his mother at Park City, requesting her to call on the local record-keeper of the tent of which Floyd L. Sackett was a member, and ask him to change the beneficiary in his certificate of insurance from Fannie Sackett to Clarence M. Sackett and wife. This request was accompanied by the required fee of 50 cents. The request was made of the local record-keeper by the mother of the insured, but she was thereupon informed that under the by-laws of the order the wife of Clarence M. Sackett could not be named as a beneficiary, and the record-keeper then filled out a proper application for change of beneficiary upon a blank form furnished by the association and mailed the same to Floyd L. Sackett, to be by him duly executed. This he did on May 8, 1905, and in the certificate he named his brother, Clarence M. Sackett, as sole beneficiary, and deposited this application in the postoffice at Yule, North Dakota, properly addressed to the local record-keeper at Park City. The letter containing this application was carried to Sentinel Butte, the nearest railroad point, in the usual course of business, and was taken by the westbound Northern Pacific train No. 3 on May 9th. This train passed through Park City in the early morning of May 10th; but train No. 3 in the course of its business did not leave mail at Park City, but carried the mail for that point on west until it met train No. 2, eastbound, when the mail for Park City was transferred to train No. 2 and by that train left at Park City. The letter containing this application was therefore not delivered at Park City until May 10th at about 3 P. M., and was received by the local record-keeper immediately thereafter. In the meantime, however, Floyd L. Sackett on May 10th received a fatal wound and died at 9:45 A. M. of that day. Not knowing of Floyd L. Sackett's death, the local record-keeper forwarded the application with the fee, to the supreme tent at Port Huron, Michigan, where on May 17th a new certificate was issued, in which Clarence M. Sackett was named as beneficiary. This new

certificate was received at Park City on May 21st and delivered to Clarence M. Sackett.

After the death of Floyd L. Sackett both Fannie and Clarence M. Sackett made claim to the insurance money, and, in order to be relieved from annoyance, the governing body of the association commenced this action, setting forth these facts and asking that the claimants be brought into court and made to litigate their respective claims. The money was paid into court, the plaintiff association relieved from further liability, and the contending claimants then agreed upon the facts substantially as herein set forth. Upon this agreed statement of facts the court found the issues in favor of Fannie Sackett, and judgment in her favor was entered, from which Clarence M. Sackett appealed.

The contentions of appellant are succinctly set forth in his brief as follows: "Upon the foregoing statement of facts we assert the following propositions: 1. The deceased had a right to change the beneficiary in his certificate of insurance by complying with the by-laws of the association. 2. If he failed to comply with all of the by-laws of the association regarding such change, and the association waived such requirements not complied with, the association alone having the right to insist upon a full compliance with its by-laws, the respondent cannot take advantage of such failure. 3. The deceased did all he could before his death to make the change of beneficiary from his wife to his brother (the appellant). The association, by voluntarily interpleading and paying the money into court, has waived noncompliance with its by-laws, and the court will consider that done which ought to be done."

1. The first contention may be conceded. It is too well settled to be open to argument.

2. As a legal proposition, the second contention is not stated accurately. It should be to the effect that, if the insured failed to comply with all of the by-laws of the association regarding such change, and the association *during his lifetime* waived such requirements not complied with, the association alone having the right to insist upon a full compliance with its by-laws, the former

beneficiary could not take advantage of such failure. As thus stated there cannot be any question of the correctness of this contention, and as we understand him, counsel for respondent does not controvert the same.

That any waiver by the association must occur during the lifetime of the insured is too well settled in reason and by the authorities to require extended notice. The association contracts that it will at the death of the insured pay to the person named as beneficiary the amount of the policy. It is a contract between the association and the insured for the benefit of a third person, and the only interest of the beneficiary is in expectancy, until the death of the insured vests in the beneficiary the right to claim the amount of the benefit, and immediately upon the happening of that contingency a right of action in favor of the beneficiary arises which the courts will enforce. This being so, the reason for the rule that after the death of the insured the association cannot waive anything to the prejudice of the beneficiary is perfectly apparent; and that this is the rule is beyond question. (1 Bacon on Benefit Societies and Life Insurance, sec. 308; *Fink* v. *Fink,* 171 N. Y. 616, 64 N. E. 506; *McLaughlin* v. *Mc-Laughlin,* 104 Cal. 171, 43 Am. St. Rep. 83, 37 Pac. 865; *Wendt* v. *Iowa Legion of Honor,* 72 Iowa, 682, 34 N. W. 470; 3 Am. & Eng. Ency. of Law, 2d ed., 998.) By paying the money into court the association waived, so far as it could do so, the failure of the insured to comply strictly with the by-laws of the order; but such waiver could not impair rights which became vested upon the death of the insured.

3. With respect to mutual benefit insurance, it is well settled that the insured may at will change the beneficiary. It is a general rule that in making such change the insured must proceed in accordance with the regulations contained in the policy and by-laws of the association, and any material deviation from the course thus marked out will invalidate the transfer; but to this rule certain exceptions have been noted. In a leading case upon this subject these exceptions are announced as follows:

"1. If the society has waived a strict compliance with its own rules, and in pursuance of a request of the insured to change his beneficiary, has issued a new certificate to him, the original beneficiary will not be heard to complain that the course indicated by the regulations was not pursued.

"2. If it be beyond the power of the insured to comply literally with the regulations, a court of equity will treat the change as having been legally made.

"3. If the insured has pursued the course pointed out by the laws of the association, and has done all in his power to change the beneficiary; but, before the new certificate is actually issued, he dies, a court of equity will decree that to be done which ought to be done, and act as though the certificate had been issued." (*Supreme Conclave Royal Adelphia* v. *Cappella* (C. C.), 41 Fed. 1.)

Neither the first nor the second of these exceptions is relied upon here. The last contention of appellant, however, is that Floyd L. Sackett had brought himself within the third exception above, and a court of equity ought to decree the change of beneficiary from Fannie to Clarence M. Sackett to have taken place prior to the death of Floyd L. Sackett. We are called upon to say, then, whether, under the facts agreed upon, Floyd L. Sackett had done all that he could do prior to his death to effect the change of beneficiary.

The by-laws of this association provide the method to be pursued by the insured in order to make this change. They also provide that the change shall take effect upon delivery to the local record-keeper of the old certificate, or, in case of its loss, proof of such loss, with a written request for such change, designating the new beneficiary. In this instance the old certificate was not lost, but it must be conceded that the association could waive failure to deliver it. The first application for a change made by Floyd L. Sackett did not comply with the by-laws of the association in a number of respects, and particularly in that it sought to make the wife of Clarence M. Sackett a beneficiary, whereas by the by-laws of the order she could

not be such; and the association not only did not waive these defects, but refused to make the change. However, the local record-keeper sent to Floyd L. Sackett an application for change, to be executed by the insured, in which he should name some qualified person as beneficiary. It does not appear that there was an obligation resting on the local record-keeper to do this, and it was apparently a gratuitous act on his part. This blank application was received by Floyd L. Sackett and duly executed by him. He then attempted to deliver it to the local record-keeper as he was required to do. He chose the United States mail as the agent to make the delivery for him. He might have taken it himself, or sent it by messenger personally. But in any event he had to assume the risk that the agent employed would fail to deliver the request at all, as in case of destruction of the mail en route, or the death of the messenger, or that delivery would not be made until a date so late as to be of no effect. No importance whatever is to be attached to the fact that he selected the mail as the agent to make this delivery for him. It was nevertheless his agent. (*Peabody* v. *Satterlee,* 166 N. Y. 174, 59 N. E. 818, 52 L. R. A. 956; *McCorkle* v. *Texas Benevolent Assn.,* 71 Tex. 149, 8 S. W. 516.) In this instance the agent which he chose delivered his request in the ordinary course of business; but before delivery was made, the insured died.

At the time of the death of the insured his request for such change had not been delivered; and the case is not made different by the fact that it was actually delivered on the day of his death and only about six hours after that event occurred. If delivery one hour after his death would work the change of beneficiary, then delivery a week or a month after death would be equally effective. But such is not the law. The interest of the beneficiary attaches instantly upon the death of the insured, and the question whether a change has been effected must be determined as of that particular instant of time. In this instance there was simply a failure on the part of the agent employed by the insured to make the delivery to the local record-keeper before the death of the insured.

With reference to that particular point of time the failure was just as complete as it would have been had the letter containing the request been lost long before the train carrying it reached Park City. Had the letter been delivered into the postoffice at Park City prior to the death of the insured, and there merely awaited the call of the local record-keeper for his mail, a case akin to those wherein equity has applied the rule that that will be deemed done which ought to have been done, might have been presented, and the transfer made to date from the time when it would have become effective, had the local record-keeper promptly called for his mail. Instances of the character of the case just supposed are to be found in the reported cases. *Jory* v. *Supreme Council*, 105 Cal. 20, 45 Am. St. Rep. 17, 38 Pac. 524, 26 L. R. A. 733; *Luhrs* v. *Luhrs*, 123 N. Y. 367, 20 Am. St. Rep. 754, 25 N. E. 388, 9 L. R. A. 534; *Hall* v. *Allen*, 75 Miss. 175, 65 Am. St. Rep. 601, 22 South. 4; *Sanborn* v. *Black*, 67 N. H. 537, 35 Atl. 942; *Hancock Mut. L. I. Co.* v. *White*, 20 R. I. 457, 40 Atl. 5; and *Supreme Conclave Royal Adelphia* v. *Cappella* above—are all cases of this character; but every one is easily distinguishable from the case now under consideration.

When Floyd L. Sackett died he had not delivered to the local record-keeper his request for a change. He had intended to do so, but the agency selected by him failed to deliver the request until after his death. The failure of his agent was his failure. When he died, the title of Fannie Sackett to this money became absolute, and the receipt of the request by the local keeper subsequently to the death of Floyd L. Sackett did not affect her right; for the association had become her debtor for the full amount of the insurance. The case of *Fink* v. *Fink*, above, is well considered, is directly in point here, and, in our opinion, correctly states the rule as we have announced it.

The judgment of the district court is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE MILBURN concur.